IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| OCTAVIUS BONDS and ERIN EVANS, | * * * | 4:09-cv-00131 |
| Plaintiffs, | * * | |
| v. | * * | |
| M. DAUTOVIC, J. MAILANDER, individually and in their official capacities, and CITY OF DES MOINES, | * * * * | ORDER ON MOTION FOR PRELIMINARY EVIDENTIARY RULING |
| Defendants. | * * | |

Before the Court is a Motion for Preliminary Evidentiary Ruling, filed by Octavius Bonds and Erin Evans, on February 26, 2010. Clerk's No. 21. Defendant, City of Des Moines, filed a Resistance on March 5, 2010. Clerk's No. 22. Plaintiffs filed a Response on March 15, 2010 (hereinafter "Pls.' Reply"). Clerk's No. 24. The matter is fully submitted.

I.  BACKGROUND

On September 13, 2008, Des Moines Police Officers M. Dautovic and J. Mailander (hereinafter "Officer Dautovic" and "Officer Mailander") (collectively "Officers") pulled over a car carrying Plaintiffs, Erin Evans ("Evans") and Octavius Bonds ("Bonds") (collectively "Plaintiffs"). Compl. ¶¶ 11, 13. During the traffic stop, Evans was forcibly removed from the vehicle by the Officers, and Officer Mailander struck her twice with a steel, tactical baton (hereinafter "ASP baton"). Id. ¶¶ 19-20, 36. Officer Dautovic sprayed Bonds in the face with pepper spray, and the Officers repeatedly struck Bonds with their ASP batons. Id. ¶¶ 23, 25-26, 30. Bonds was later taken to Broadlawns General Hospital where his numerous injuries were treated. Id. ¶ 51. Both Evans and Bonds were detained, criminally charged, and tried before a

jury.  *Id.* ¶ 46.

Plaintiffs subsequently filed the present action, asserting that the Officers, in both their individual and official capacities, are liable for:  (1) assault, pursuant to Iowa law;[1] and (2) violations of Plaintiffs' rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983.[2]  *Id.* ¶¶ 53-76.  Plaintiffs also assert each of these claims against the City of Des Moines ("City") under the theory of respondeat superior.[3]  *Id.* ¶¶ 77-82.

Plaintiffs now seek a preliminary evidentiary ruling regarding statements made by Des Moines Police Chief Judy Bradshaw ("Chief Bradshaw"), during her July 29, 2009 deposition,

---

[1] Plaintiffs assert claims of "assault and battery," but "[t]he word 'battery' is not employed in [the current codification of the Iowa Code], which uses 'physical contact' in its stead, or 'bodily injury' or 'serious injury' for its aggravation" to define the crime of  "assault." *State v. Fountain*, No. 07-0999, 2008 WL 4530696, at * 3 (Iowa Ct. App., Oct. 1, 2008) (citing Iowa Code § 708 (2005)).

[2] Plaintiffs also assert claims of intentional infliction of emotional distress against Officer Dautovic, John Doe One, John Doe Two, and John Doe Three, and claims of harassment against Officer Dautovic and John Doe One.  Compl. ¶¶ 91-150.  However, these claims are based on events subsequent to the traffic stop, *see id.*, and thus, do not bear on the present Motion, which only concerns statements related to the traffic stop.

[3] Iowa courts recognize vicarious liability of municipalities for the actions of its employees under certain circumstances.  *See Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999).  With regard to the § 1983 claims, however, the United States Supreme Court has consistently held that a municipality may not be held liable for the unconstitutional conduct of its employees under a theory of respondeat superior.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("[R]espondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor. . . .  We have consistently refused to hold municipalities liable under a theory of respondeat superior.").  Accordingly, the Court does not evaluate the admissibility of the disputed evidence in relation to the Plaintiffs' § 1983 claims against the City under the theory of respondeat superior.

regarding the use of force employed by the Officers.[4]  *See* Pls.' Mem. in Supp. of Mot. for Prelim. Evidentiary Ruling at 2 (hereinafter "Pls.' Br.").  Plaintiffs have identified the following portions of Chief Bradshaw's deposition testimony that they seek to have admitted:

- "[T]he Officers' use of the ASP [baton], and – during this incident was inappropriate.  It did not match the level of resistence that Ms. Evans exhibited that day or Mr. Bonds.  And I believe that it was inappropriate."  Bradshaw Dep. at 14.

- "Q:  Did your conclusion go as far as determining that the [ASP batons] should not have been used at all?  A:  I conclude that."  *Id.*; *see also id.* at 32 ("Q:  In other words, by my question I meant that the [ASP batons] shouldn't have been used at all under these circumstances?  A:  That's right.").

- "Q:  I believe at the press conference– and I'm paraphrasing– you said something to the effect that the use of force was not consistent with training or policy.  Would you elaborate on the basis of that statement?  A:  Yes.  As it pertains to the ASP baton, officers are trained to engage with strikes, and then disengage, to see if the strikes are having any impact on the individual that you're trying to bring into compliance and into custody."  *Id.* at 31-32.

- "I do believe that once the officers engaged the use of the ASP [baton], that they should have disengaged to see if the impact of the strikes were effective."  *Id.* at 32.

- "Q:  So are you critical of the number of blows?  A:  Yes.  Q:  Are you critical of the deployment of the [ASP batons] at all?  A:  Yes."  *Id.* at 32.

Pls.' Mot. at 1-2.

## II.  LAW AND ANALYSIS

Plaintiffs move for a preliminary ruling regarding the admissibility of Chief Bradshaw's statements as admissions under Federal Rule of Evidence 801(d)(2) on the basis that Chief Bradshaw was "a person authorized" by the City to speak on the subject matter, and that she is

---

[4]  Plaintiffs also request a ruling that statements made by Chief Bradshaw at a June 10, 2009 press conference are admissible.  However, the record before the Court does not contain these statements, thereby, precluding an evaluation of their admissibility.  Accordingly, the Court limits its discussion to portions of the deposition testimony that have been specifically identified.

an authorized agent of the City who made the statements within the scope of her employment, and during the existence of her employment relationship.[5]  Rule 801(d)(2)(C) and (D).  The City does not dispute Plaintiff's characterization of the disputed statements as non-hearsay, party statements under Rules 801(d)(2)(C) and (D).[6]  Instead, the City offers two alternative arguments in opposition to admitting the disputed statements:  (1) the statements are related to a conclusion reached during an internal investigation by the police department and, thus, are irrelevant, would cause jury confusion, and have the potential to be highly prejudicial to the City; and (2) the statements were subsequent remedial measures.  The Court addresses each argument in turn.

      A.  *Admissibility of Party Statement Derived, in Part, from Internal Investigations*

"A statement by a party's [agent] can be admissible as an admission by a party opponent if it is relevant."  *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 996 (8th Cir.

---

[5]  Both Dautovic and Mailander filed joinders to the City's Resistance in their individual capacities.  Clerk's Nos. 23 (Mailander), 25 (Dautovic).   Plaintiffs, however, did not respond to these joinders, nor have they offered any argument that the disputed statements should be admissible against the Officers in their individual capacities.  Accordingly, the Court treats Plaintiffs' Motion as seeking admission of the disputed statements only against the City and the Officers in their official capacities, and will not discuss Dautovic's and Mailander's joinders.  In addition, the Court notes that the statements do not qualify as statements by the individual Officers and, thus, presumably would be hearsay with respect to the claims against the Officers in their individual capacities .  *See Strope v. Thomas*, No. Civ. A. 98-3354, 2000 WL 210399, at * 7-8 (D. Kan. Feb. 16, 2000) (holding that statements by other officers about the defendant officer's behavior were inadmissible hearsay against the officer in his individual capacity, but that the same statements were admissible in the suit against the officer in his official capacity).

[6]  Federal Rule of Evidence 801(d)(2) provides, in relevant part, that a statement is not hearsay if:

> The statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

2008).  The standard of relevance set forth in Federal Rule of Evidence 401 includes "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  If evidence does not meet this standard, it is not admissible.  Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Fed. R. Evid. 403.  The application of Rule 403 "requires a fact-intensive, context-specific inquiry."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

   Plaintiffs assert that Chief Bradshaw's statements will be relevant to the "reasonableness" inquiry required in a Fourth Amendment excessive force claim.  Pls.' Br. at 1; Pls.' Reply at 2-3.  To prove their § 1983 claims against the Officers in their official capacities, Plaintiffs will be required to show that a constitutional violation occurred, and that the constitutional violation was committed pursuant to an official custom, policy, or practice of the City.[7]  *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978).  To prove a constitutional violation due to excessive use of force under the Fourth Amendment, Plaintiffs will be required to show that the force used by the Officers was not objectively reasonable given the circumstances of the traffic stop.  *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994) ("Claims that law enforcement officers used excessive force in making an arrest are analyzed under the Fourth Amendment, and the test is whether the amount of force used was

---

[7] While it is not determinative in the present Motion, the Court is concerned that the Complaint does not allege the existence of an unconstitutional custom, policy, or practice by the City.

objectively reasonable under the particular circumstances.").

> "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Bell v. Wolfish*, 441 U.S. 520, 529 (1979)).  "The [] reasonableness of force is judged from the perspective of the officer on the scene, taking into consideration the facts known to him, as opposed to one possessing the illuminating power of hindsight." *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002).

The City disputes the relevance of Chief Bradshaw's statements and also asserts that the introduction of the statements would lead to undue prejudice and jury confusion.  City's Br. at 7.  The City presents several alternative, but somewhat intertwined, rationales for excluding the statements, which center around the fact that the statements followed an internal administrative investigation.  *See id.* at 7-12.  The City asserts that the statements should not be admissible at trial because Chief Bradshaw's opinion was affected by her evaluation of the police department policies regarding the excessive use of force, such that it is equivalent to the results of internal departmental investigation.[8]  *Id.* at 7.  The City also notes that "while the Chief was free to consider all facts and circumstances related to department operation in making an employment decision, the jury will be confined to the evidence in this case as it works to make

---

[8] While it appears that the Des Moines Police Department did perform an administrative review of the Officers' conduct during the traffic stop, the City does not explain the exact nature of the City's internal investigation, or its relation to opinions expressed by Chief Bradshaw in her deposition.

liability/damage decisions." *Id.* at 8. The City suggests that because Chief Bradshaw's decision-making process is not equivalent to a jury trial, her statements would "mislead the jury into thinking that the Chief had already done their work for them," which would also be prejudicial to the City's defense. *Id.* at 7-8. On the sparse record before the Court, the Court does not find these arguments compelling.

        1.     *Relevance of the disputed statements*.

Opinion statements, such as the statements at issue here, even when made by a person without personal knowledge of the facts, are well are within the ambit of Rule 801(d)(2). *See* Fed. R. Evid. 801(d)(2) Advisory Committee Note (1972) (observing that "[t]he freedom which admissions have enjoyed . . . from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge . . . calls for generous treatment of this avenue to admissibility"); *Mahtlandt v. Wild Canid Survival & Research Ctr., Inc.*, 588 F.2d 626, 630 (8th Cir. 1978) (finding a statement, by a corporate agent, admissible against the corporation even though the agent had no personal knowledge of the alleged incident). As a general matter, a statement by a party, related to behavior or beliefs that, if believed, could satisfy at least one element of a claim against the party, will not only qualify as a party-opponent statement, it will also be relevant. *See*, *e.g.*, *White v. Honeywell, Inc.*, 141 F.3d 1270, 1275-76 (8th Cir. 1998) (concluding, in an employment discrimination case, that a supervisor's use of a racial epithet in reference to the plaintiff was "relevant and highly probative background material which . . . should have been admitted"); *Russell v. United Parcel Serv., Inc.*, 666 F.2d 1188, 1190–91 (8th Cir. 1981) (holding that statements from two supervisors regarding the manager's discriminatory, retaliatory intent toward the plaintiff were admissible in an employment discrimination case as

party-opponent admissions).

Here, the majority of the disputed statements present Chief Bradshaw's opinion that the Officers' use of the ASP batons was "inappropriate." As an agent and person authorized to make statements on behalf of the City, which it appears Chief Bradshaw is, her opinion regarding the appropriateness of the use of the ASP batons has substantial probative value with respect to Plaintiffs' excessive use of force claims against the Officers in their official capacity. *See Zeigler v. Fisher-Price, Inc.*, 302 F. Supp. 2d 999, 1021 (N.D. Iowa 2004) (holding that a manufacturer's press release acknowledging product defects was an admission relevant to the claims in a product liability case). The background for Chief Bradshaw's statements is not clear from the record before the Court, but a reading of the deposition testimony suggests that Chief Bradshaw was presenting her own conclusions, rather than the results of an internal investigation. The fact that Chief Bradshaw may have considered the results of an internal investigation and compared the Officers' behavior to existing Des Moines Police Department policy in reaching her opinion would not render her statements irrelevant. Likewise, whether or not Chief Bradshaw considered evidence that may, or may not, be presented during trial does not lessen the probative value of her opinion that the Officers' use of the ASP batons was inappropriate. Absent additional information regarding the context of Chief Bradshaw's statements about the Officers' "inappropriate" use of the ASP batons, the Court concludes as a preliminary matter that they are relevant to the "reasonableness" of the Officers' use of force.

However, Chief Bradshaw's statement that the Officers' use of the ASP batons was not consistent with training or policy is not relevant to the "reasonableness" inquiry required in a Fourth Amendment excessive force claim. Bradshaw Dep. at 31-32 (stating "[a]s it pertains to

the ASP baton, officers are trained to engage with strikes, and then disengage, to see if the strikes are having any impact on the individual that you're trying to bring into compliance and into custody."). As noted in several cases cited by the City, the protections of the Fourth Amendment and, thus, the Fourth Amendment reasonableness inquiry does not turn on police enforcement practices, which are "variable from place to place and from time to time." *See Whren v. United States*, 517 U.S. 806, 811-16 (1996) (holding that a traffic stop did not violate the Fourth Amendment when the stop was supported by probable cause regardless of the individual officer's actual motivations, and rejecting the petitioners' argument that the "reasonableness" inquiry should ask whether "the officer's conduct deviated materially from usual police practices"); *Thompson v. City of Chicago*, 472 F.3d 444, 453-55 (7th Cir. 2006) (affirming a district court's evidentiary ruling that police department administrative guidance regarding officer conduct and job performance was irrelevant in an inquiry whether a particular officer used excessive force when apprehending a suspect); *Tanberg v. Sholtis*, 401 F.3d 1151, 1161-65 (11th Cir. 2005) (upholding the trial court's decision to exclude evidence of police standard operating policies and the outcome of an internal investigation as both "irrelevant to the federal claims and likely to cause jury confusion regarding the state claims"). Thus, for the purposes of this preliminary evidentiary ruling, the Court concludes that this particular statement would not be admissible to prove a violation of Plaintiffs' Fourth Amendment rights.

     2.    *Rule 403 balancing*.

In regard to the apparently relevant statements, Chief Bradshaw's opinions regarding the inappropriate use of the ASP batons, the seemingly high probative value of the statements weigh against exclusion. Again, the Court's analysis is hindered by a lack of context for the

statements, but it appears that the potential damaging effect of the statements to the City's defense derives from their relevance. This is not "prejudice" that would outweigh the probative value of the admissions. *See White*, 141 F.3d at 1276 (holding that the highly probative nature of inflammatory racial epithets was not substantially outweighed by any danger of unfair prejudice); *United States v. Yarns*, 811 F.2d 454, 456 (8th Cir. 1987) (affirming district court's decision to allow defendant's statement that he could lie convincingly to a judge as an admission of a party-opponent because the resulting "prejudice would only be the consequence of the high probative value of the admissions and would not have required exclusion under Rule 403"). Moreover, the rationale for the hearsay exception to party-opponent statements lays in "a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements," such that the damage that follows from one's own statements is not "unfair prejudice" for the purposes of a Rule 403 analysis. *See Jewel v. CSX Transp., Inc.*, 135 F.3d 361, 365) (6th Cir. 1998) ("The admissibility of statements of a party-opponent is grounded not in the presumed trustworthiness of the statements, but on 'a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements.'") (quoting *United States v. DiDomenico*, 78 F.3d 294, 303 (7th Cir. 1996)); Fed. R. Evid. 801(d)(2) Advisory Committee Note (1972) (noting that "[a]dmissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system").

Nor is it evident why the admission of the statements about the appropriateness of the force used by the Officers would lead to jury confusion. The City argues that the disputed statements would confuse the jury because the internal administrative investigation process applies different standards and procedures than a jury trial. But, as noted above, on the record

before the Court, it is not apparent that the disputed statements represent the conclusions of an internal investigation, much less that the City's "internal administrative investigation process" is such that it would lead to jury confusion.  After the parties have more fully developed their evidence and arguments for trial, they may make further motions regarding the admissibility of the statements, but on the present record, the Court cannot conclude that the statements should be excluded to avoid jury confusion.[9]

B.  *Chief Bradshaw's Statements as a Subsequent Remedial Measure*

The City also argues that since Chief Bradshaw's statements about the Officers' inappropriate use of force were made after an internal investigation and the investigation was ordered to address any policy violation that may have occurred, both the investigation and any remarks that followed from the investigation are inadmissible as a subsequent remedial measure, pursuant to Federal Rule of Evidence 407.

Plaintiffs counter that the only remedial measure taken by the City was to give the Officers the choice of resigning or being fired.  Plaintiffs point out that they do not seek to introduce Chief Bradshaw's statements regarding the Officers' resignations; rather, their request is limited to the statements about the use of the ASP batons.  These statements, Plaintiffs assert, are not subject to exclusion as subsequent remedial measures.  The Court agrees.

Rule 407 only applies to instances when "measures are taken that, if taken previously,

---

[9] The City also summarily states in a footnote that "another reason to hold the evidence inadmissible is that the defense of qualified immunity is not lost when policies are violated." City's Br. at 11, n.2.  The City provides no supporting argument for the seemingly novel contention that the admissibility of the disputed statements could hinge on the possibility of a defense of qualified immunity, and the case cited by the City in the footnote, *Groh v. Ramirez*, 540 U.S. 551 (2004),  provides no context for this proposition.  Given the absence of explanation and support for this proposition, the Court finds it lacking in merit.

would have made the injury or harm less likely to occur."[10] Chief Bradshaw's statements at the press conference, and the subsequent statements during her deposition about the Officers' use of the ASP batons are not "measures" that could have been taken prior to the incident such that they could "have made the injury or harm less likely to occur." Thus, Rule 407 does not apply to the statements at issue.

### III. CONCLUSION

For the reasons stated herein, and subject to the limitations set forth herein, Plaintiffs' Motion for a Preliminary Evidentiary Ruling is GRANTED in part and DENIED in part. Clerk's No. 21.

IT IS SO ORDERED.

Dated this ___22nd___ day of July, 2010.

/s/ Robert W. Pratt
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT

---

[10] Rule 407 states in full:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.